# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT PADUCAH

**WILLIAM JOSEPH MADDEN**                                                                      **PLAINTIFF**

v.                                                      **CIVIL ACTION NO. 5:19-CV-P73-TBR**

**JONATHAN GRATE** *et al.*                                                                        **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon three motions filed by *pro se* Plaintiff William Joseph Madden – a motion for a preliminary injunction (DN 6), a related motion for oral argument (DN 15), and a motion to seal this action (DN 13). For the reasons set forth below, the Court will deny these motions.

## I. MOTION FOR A PRELIMINARY INJUNCTION

### A. SUMMARY OF EVIDENCE AND ARGUMENTS[1]

Plaintiff is a convicted prisoner who brought this civil-rights action pursuant to 42 U.S.C. § 1983. Plaintiff is currently incarcerated at Kentucky State Penitentiary (KSP). In his complaint, Plaintiff alleges that when he was incarcerated at another facility, he was wrongfully issued a uniform that is only worn by inmates who are in protective custody.[2] He alleges that he had to wear this uniform for approximately four months. Plaintiff states that other inmates, including violent prison gang members, who saw him wearing this uniform suspected he was

---

[1] Plaintiff's complaint, which sets forth most of the allegations material to the instant motion for a preliminary injunction, was signed under penalty of perjury.

[2] In his reply, Plaintiff elaborates on the circumstances surrounding this incident. He states that in March 2018, while he was incarcerated at Eastern Kentucky Correctional Complex (EKCC), two inmates entered his prison cell and made threats at knife point after Plaintiff reported a theft of his property. Plaintiff states that he requested protective custody at that time but his request was denied. He alleges, however, that he was nonetheless "forced to wear the green uniform that labeled him as a P.C. inmate." Plaintiff attaches Kentucky Department of Corrections (KDOC) Policies and Procedures to his reply which he states show that he should have been assigned to administrative segregation and dressed in a yellow uniform after his "P.C. request" at EKCC. (DN 16-1, KDOC Policies and Procedures).

either a "child molester" or an "informant." Plaintiff writes, "[o]nce an inmate is suspected or confirmed of belonging to one or more of these [] groups, they are almost guaranteed to face victimization at the hands of prison gangs, who especially target them for extortion, and assault if the victim refuses to pay."

Plaintiff states that in February 2019, shortly after he had been transferred to KSP, he was approached by gang members in an extortion attempt. Plaintiff alleges that when he made it clear he would not pay, "[he] was threatened that he would be stabbed, which is not an uncommon occurrence at KSP." Plaintiff states that after this threat, he only left his cell "when absolutely necessary" and stopped eating in the cafeteria, which he alleges is "a place where many attacks occur." Plaintiff then states that on March 11, 2019, he entered the cafeteria for breakfast. He alleges that it was there that another inmate approached him and "began throwing punches" which caused Plaintiff to suffer a busted lip. Plaintiff writes that he "realized immediately that the assault was a response to his refusal to pay the gang's extortion demand."

Plaintiff states that he has informed both Defendants KDOC Acting Commissioner Grate and KSP Warden Hart of "the exact nature and circumstances of his threats to safety." He also states that when he requested to be placed in long-term protective custody to prevent further assaults from occurring, Defendants Spindler, Bradley, and Fisher conducted a hearing and ultimately decided to deny Plaintiff's request.

Plaintiff states that Defendants are aware that he is at a heightened risk of physical assault because other inmates believe that he was in protective custody at EKCC and that Defendants are forcing Plaintiff to remain in a dangerous environment by refusing to actually place him in protective custody now. Plaintiff also argues that although Defendants have offered to transfer him to another facility instead of placing him in protective custody, this resolution will not help

him because he will be face extortion and assault from gang members at any facility because they "share information about their targets so the victim cannot escape."

In their response to Plaintiff's motion, Defendants argue that Plaintiff has failed to meet his burden of showing that he would be incarcerated under conditions posing a risk of substantial harm if he were transferred to another facility or that Defendants are being deliberate indifferent to his safety since they have offered him a transfer. They also argue that Plaintiff has failed to establish that he will suffer irreparable harm if he is transferred instead of being placed in protective custody at KSP. Finally, Defendants argue that the Court should not allow Plaintiff, or any prisoner, to dictate to prison officials under what circumstances a prisoner should be placed in protective custody.

In his reply, Plaintiff disputes Defendants' argument that he will not suffer irreparable injury if a preliminary injunction is not issued. He states that, "having served ten total years in prison throughout his life, [he] has an intimate understanding of inmate prison politics" and "it is well established that inmates who have ANY involvement or association with protective custody are fair game for the various prison gangs to victimize by demanding a 'tax' to remain in the general population [], and assaults if they refuse to pay." Plaintiff writes: "The question is not 'will' [he] suffer irreparable injury . . . but 'when.' Also the seriousness of the injury is left to fate."

### B. LEGAL STANDARD

Federal Rule of Civil Procedure 65(a) permits a party to seek preliminary injunctive relief if he believes he will suffer imminent irreparable harm or injury. The decision whether to grant a request for interim injunctive relief falls within the sound discretion of the district court. *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000); *Friendship Materials,*

*Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 102 (6th Cir. 1982). An injunction, however, is an extraordinary remedy that should be granted only after a court has considered the following four factors:

> (1) whether the movant has a "strong" likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction.

*Tucker v. City of Fairfield*, 398 F.3d 457, 461 (6th Cir. 2005) (quotations and citations omitted). The four preliminary injunction factors are "'factors to be balanced, not prerequisites that must be met.'" *Michael v. Futhey*, No. 08-3932, 2009 U.S. App. LEXIS 28217, at *93-94 (6th Cir. Dec. 22, 2009) (quoting *Six Clinics Holding Corp., II v. Cafcomp Sys.*, 119 F.3d 393, 400 (6th Cir. 1997)). While these factors are to be balanced, the failure to show a likelihood of success on the merits or irreparable harm is generally fatal. *See Gonzales v. National Bd. of Med. Exam'rs*, 225 F.3d at 625; *Patio Enclosures, Inc. v. Herbst*, 39 F. App'x 964, 967 (6th Cir. 2002).

Plaintiff bears the burden of demonstrating his entitlement to a preliminary injunction, and his burden is a heavy one. Injunctive relief is "an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th. Cir. 2002). Indeed, the proof required for a plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a motion for summary judgment. *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). Further, where a prison inmate seeks an order enjoining state prison officials, this Court is required to proceed with the utmost care and must be cognizant of the unique nature of the prison setting. *See Kendrick v. Bland*, 740 F.2d 432, 438, n.3 (6th Cir. 1984).

4

# C. ANALYSIS

In light of the above standard and upon consideration of the arguments and evidence presented by Plaintiff at this stage in the proceedings, the Court concludes that Plaintiff has failed to meet his burden of proving a likelihood of success on the merits or that he will be irreparably injured if a preliminary injunction is not granted.

At the outset of its analysis, the Court observes that prisoners have no inherent constitutional right to placement in any particular prison, security classification, or housing assignment. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Harris v. Truesdell*, 79 F. App'x 756, 759 (6th Cir. 2003); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003). The Court further observes that "prisons are necessarily dangerous places; they house society's most antisocial and violent people in close proximity with one another." *Farmer v. Brennan*, 511 U.S. 825, 858 (1994) (Thomas, J. concurring). As a result, some level of prison violence is unavoidable no matter what precautions are taken and officers cannot be expected to prevent every assault before it occurs or to stop every assault in progress before injuries are inflicted. *Id*. at 858-59.

Nonetheless, under the Eighth Amendment, "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. at 833. To establish liability under the Eighth Amendment, Plaintiff must show that Defendants are acting with deliberate indifference "to a substantial risk of serious harm." *Id.* at 828. Plaintiff must make both an objective showing that he is incarcerated under conditions that pose a substantial risk of serious harm as well as a subjective showing that Defendants know of and are disregarding an excessive risk to Plaintiff's safety. *Id*. at 837. While one inmate's threat to another is sufficiently serious to satisfy the objective component, a "general concern" about

5

safety from unidentified inmates does not suffice. *See Williams v. McLemore*, 247 F. App'x 1, 10 (6th Cir. 2007) (citing *Gant v. Campbell*, 4 F. App'x 254, 256 (6th Cir. 2001)). The risk of harm "must be based upon more than [the inmate's] subjective fear." *Browning v. Pennerton*, 633 F. Supp. 2d 415, 430 (E.D. Ky. 2009). Nonetheless, a court may infer deliberate indifference if "the record [] indicate[s] either that assaults occurred so frequently that they were 'pervasive,' or that [plaintiff] belonged to an 'identifiable group of prisoners' for whom 'risk of . . . assault [was] a serious problem of substantial dimensions.'" *Walsh v. Brewer*, 733 F.2d 473, 476 (7th Cir. 1984) (first quoting *Murphy v. United States*, 653 F.2d 637, 644 (D.C. Cir. 1981), and then *Withers v. Levine*, 615 F.2d 158, 161 (4th Cir. 1980)).

Plaintiff alleges that other inmate(s) at KSP attempted to extort him and then later attacked him because he refused to be extorted. Defendants do not dispute that the extortion attempt or subsequent attack occurred. Moreover, both parties agree that, following this attack, Plaintiff requested that he be placed in protective custody but KSP officials instead offered to transfer him to another facility as a means of providing for his safety. At its essence, the disagreement is about whether the evidence shows that Plaintiff would face a substantial risk of serious harm if he were transferred.

Plaintiff argues that the attempted extortion and subsequent attack occurred because gang members at KSP believed that he had been in protective custody at EKCC, and that this information about him will be communicated to gang members housed at whatever institution he is transferred to, and that he will therefore be at substantial risk of extortion and attack wherever he goes. Defendants contend that Plaintiff has not presented any objective evidence establishing that the attempted extortion and subsequent attack at KSP occurred because gang members at KSP believed Plaintiff had been placed in protective custody at EKCC. They also argue that

Plaintiff's "belief" that he will face danger wherever he is transferred solely because other inmates may believe he was once in protective custody is belied by the lack of evidence showing that he was attacked by other inmates at EKCC or WKCC following his placement in a protective custody uniform at EKCC. Thus, they argue that their offer to transfer Plaintiff to another facility in response to the extortion attempt and attack upon him at KSP is reasonable.

The Court agrees with Defendants. Plaintiff has presented his subjective belief, but no objective evidence, which would allow the Court to conclude that the attempted extortion and assault which occurred at KSP happened because the other inmates believed that Plaintiff had been placed in protective custody at a prior facility. He has also presented no evidence of systemic threats to the safety of inmates who were once allegedly placed in protective custody. Thus, the Court cannot conclude that Plaintiff would face a substantial risk of harm if he were transferred to another facility. For these same reasons, the Court is unable to find that Defendants' offer to transfer him to another facility, instead of placing him in protective custody, is sufficient to show deliberate indifference to Plaintiff's safety. Plaintiff simply has not established a strong likelihood of success on the merits at this juncture. *See, e.g.*, *Enyart v. Ohio Dep't of Rehab. & Corr.*, No. 2:16-cv-00161, 2016 U.S. Dist. LEXIS 129963 (S.D. Ohio Sept. 22, 2016) (denying inmate child sex offender's motion for a preliminary injunction ordering that he be housed in a single cell because he failed to present objective evidence "identifying any threat from any specific inmate to Plaintiff or to a class of persons to which plaintiff belongs").

In the same vein, although Plaintiff vehemently argues that he will be irreparably harmed in the form of bodily injury by other inmates if he is transferred to another institution instead of being placed in protective custody at KSP, he has not produced sufficient evidence to allow the Court to conclude that this so. *See, e.g.*, *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22-23

(2008) (rejecting the notion that a mere "possibility" of irreparable injury was sufficient for a preliminary injunction and holding that "plaintiffs seeking preliminary relief [are required] to demonstrate that irreparable injury is likely in the absence of an injunction"); *see also In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 530 (4th Cir. 2003) (explaining that irreparable harm must be "actual and imminent" rather than "remote [and] speculative").

Finally, the third and fourth elements of the analysis also weigh against granting preliminary injunctive relief on the above claims. It is generally in the best interests of all if courts refrain from becoming involved in day-to-day prison operations. Indeed, the Court's intervention in internal prison operations without an urgently compelling and extraordinary reason is viewed as against the public interest. *Lang v. Thompson*, No. 5:10-CV-379-HRW, 2010 U.S. Dist. LEXIS 126890, at *19 (E.D. Ky. Nov. 30, 2010) ("[J]udicial interference is necessarily disruptive, and absent a sufficient showing of a violation of constitutional rights, the public welfare suffers if such extraordinary relief is granted in the prison context.").

In sum, the Court finds that Plaintiff has not met his burden of establishing that "the circumstances clearly demand" the extraordinary relief he seeks. For this reason, the Court will deny Plaintiff's motion for a preliminary injunction.

## II. MOTION FOR ORAL ARGUMENT

The Court next turns to Plaintiff's request for oral argument, in which he argues that he can better explain the need for the issuance of an injunction if he is allowed to make oral argument. Plaintiff specifically notes that he is forced to hand write his motions, and that although he is "fairly articulate," he has "struggled and failed" to address certain issues raised by Defendants.

Upon review of the complaint and Plaintiff's briefs, the Court concludes that oral

argument is not warranted. Plaintiff's filings show that he is knowledgeable and articulate. Moreover, Plaintiff does not explain what issues Defendants raised that he was unable to address in his reply. Thus, Plaintiff has presented no reason the motion for a preliminary injunction cannot be decided based upon the briefing alone.

As such, the Court will deny Plaintiff's motion for oral argument.

### III. MOTION TO SEAL THE CASE

Finally, the Court turns to Plaintiff's motion to "seal all documents in this case." In support of his motion, Plaintiff states that "this case involves information that if, published in the public record while Plaintiff resides in the prison general population, will present additional threats to his safety." Plaintiff states that because this action addresses issues of gang violence and protective custody, "if other prisoners become aware of the details of the case Plaintiff will likely face retaliation and increased risk of assaults." He writes that "Kentucky prisons grant inmates access to legal research databases such as Lexis Nexis" and that "[i]nmates sometimes use the research computers to obtain compromising information about other inmates . . . and use that information for extortion leverage." Plaintiff asserts that "by the Court [] sealing the record in this case, the chances of retaliation by prison gang members against [him] will be greatly reduced."

"A strong public right of access attaches when a document is filed or utilized in public proceedings." *Karl v. Bizar*, No. 2:09-CV-34, 2009 U.S. Dist. LEXIS 136841, at *3 (S.D. Ohio Oct. 28, 2009) (citing *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1178-79 (6th Cir. 1983)). Indeed, a district court's discretion to seal the record of a proceeding "'is to be exercised charily.'" *S.E.C. v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993) (quoting *Federal Sav. & Loan Ins. Corp. v. Blain*, 808 F.2d 395, 399 (5th Cir. 1987)). This is because

9

public access to judicial records "'serves to promote trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of its fairness.'" *Brown & Williamson Tobacco Corp. v. F.T.C.,* 710 F.2d at 849 (quoting *Littlejohn v. BIC Corp.*, 851 F.2d 673, 678 (3d Cir. 1988)). Indeed, the Sixth Circuit has held that "only the most compelling reasons can justify the total foreclosure of public and professional scrutiny" of documents forming the basis of the adjudication. *Id*. at 1180 (quoting *Joy v. North*, 692 F.2d 880, 894 (6th Cir. 1982)) (internal citations omitted). This right of access is reflected in this Court's Local Rules governing civil proceedings, which "presume that all documents filed in district court should be available for the public to access and that restricting public access can occur only in limited circumstances" in accordance with a federal statute, federal rule of procedure, local rule, or order of this Court. LR 5.7(a).

In light of the above case law, the Court concludes that sealing this action is not warranted. Plaintiff's argument for sealing is too speculative, general, and conclusory. He has not provided specific facts to substantiate his claim that he faces a substantial risk of danger if this action is not sealed. For example, he does not specifically identify any other inmate, name any individuals who are allegedly involved in gangs at KSP, or tie any specific gang to the allegations set forth in the complaint. Thus, the Court is not persuaded that any compelling interests exist sufficient to warrant restricting the public's access entirely from this proceeding and its records. *See, e.g., Anderson v. Jarnigan*, No. 2:19-CV-20-TAV-MCLC, 2019 U.S. Dist. LEXIS 92868, at *9-10 (E.D. Tenn. June 4, 2019) (denying motion for leave to file under seal pleadings generally alleging gang-related fights, assaults, and drug activity because the inmate's "vague and conclusory statements regarding fear and retaliation are insufficient to constitute a

'compelling' reason to prohibit disclosure of court documents"); *Dickson v. United States*, No. 6:16-cv-29-KKC, 2016 U.S. Dist. LEXIS 27011, *13-16 (E.D. Ky. Mar. 3, 2016) (denying as too sparse and conclusory a prisoner plaintiff's motion to seal all pleadings in the action because they identify him as sex offender even though plaintiff alleged that he had received "numerous written and verbal death threats, intermittent danger to [his] life" and that if the case was not sealed he would get "seriously hurt or killed" and noting that two other courts had declined to seal actions he had brought for the same reasons).

As such, the Court will also deny Plaintiff's motion to seal this action.

### IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiff's motions for a preliminary injunction (DN 6), motion for oral argument (DN 15), and motion to seal the case (DN 13) are **DENIED**.

Date: July 17, 2019

*[Signature: Thomas B. Russell]*

**Thomas B. Russell, Senior Judge**
**United States District Court**

cc: Plaintiff, *pro se*
    Counsel of Record
4413.011