UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:19-CV-73-TBR-LLK

WILLIAM JOSEPH MADDEN,     PLAINTIFF

v.

JONATHAN GRATE, *et al.*,     DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on several motions. First, Plaintiff William Madden filed a Motion for Partial Summary Judgment. [DN 21]. Second, Defendants Travis Bradley, Amy Fisher, Jonathan Grate, DeEdra Hart, and Michael Spindler filed a Motion for Summary Judgment. [DN 30]. Third, Plaintiff filed a Motion to Clarify the Record. [DN 25]. Fourth, Plaintiff filed a Motion for Extension of Time. [DN 48]. Finally, Defendants filed a Motion to Hold Scheduling Order in Abeyance. [DN 50]. Fully briefed, these matters are ripe for adjudication. For the reasons stated herein: Plaintiff's Motion for Partial Summary Judgment, [DN 21], is DENIED; Defendants' Motion for Summary Judgment, [DN 30], is DENIED IN PART and GRANTED IN PART; Plaintiff's Motion to Clarify the Record, [DN 25], is GRANTED; Plaintiff's Motion for Extension of Time, [DN 48], is GRANTED; and Defendant's Motion to Hold Scheduling Order in Abeyance, [DN 50], is GRANTED.

## BACKGROUND

Plaintiff is incarcerated at Kentucky State Penitentiary ("KSP"). He brought this action against five prison officials in their official and individual capacities: Kentucky Department of Corrections Acting Commissioner Jonathan Grate, KSP Warden DeEdra Hart, KSP Unit Administrators Michael Spindler and Travis Bradley, and KSP Classification Treatment Officer Amy Fisher. [DN 1]. Plaintiff claims that when he was incarcerated at Eastern Kentucky

1

Correctional Complex ("EKCC"), he was erroneously issued a green uniform that is worn only by inmates in protective custody. [DN 1 at 4]. Plaintiff wore the green uniform from approximately March 15, 2018 to June 11, 2018. [DN 44-2 at 425]. He alleges that other inmates assumed, based on this uniform, that Plaintiff was a child molester or an informant and this led to threats of extortion and violence by other prisoners. [DN 1 at 4]. Plaintiff claims that when he was transferred to Western Kentucky Correctional Complex ("WKCC") on June 14, 2018, he continued to face extortion attempts and was assaulted on December 3, 2018. [DN 44-2 at 425]. Soon after this attack, Plaintiff was transferred to KSP. *Id.* In February 2019, he claims he was approached by gang members who stated "they knew what happened with [Plaintiff] at Eastern, and [Plaintiff] would have to pay them to stay on the yard" at KSP. [DN 44-5 at 594]. When Plaintiff informed them that he would not pay, they threatened to stab him. [DN 1 at 5]. After this incident, Plaintiff did not leave his cell unless it was necessary. *Id.* However, on March 11, 2019, Plaintiff was required to enter the prison cafeteria where he was attacked by another inmate. *Id.* at 5–6. Plaintiff believes this altercation was a direct result of his refusal to pay the gang members. *Id.* at 6.

Subsequently, Plaintiff informed prison officials that his safety was at risk and requested protective custody to prevent further assaults. *Id.* Pursuant to KSP policy, Defendant Fisher opened an investigation into whether Plaintiff was in danger, but ultimately concluded the protective custody request should be denied. [DN 311 at 282]. On April 8, 2019, Defendants Spindler and Bradley conducted a hearing regarding Plaintiff's protective custody request. *Id.* at 283. After reviewing Fisher's investigation and taking Plaintiff's statement, the Committee denied the request. *Id.* On May 17, 2019, Plaintiff filed the current action claiming that Defendants violated his Eighth Amendment rights by failing to take reasonable measures to guarantee his safety. [DN 1].

The Court conducted an initial review of Plaintiff's claims and dismissed his official-capacity claims for damages pursuant to 28 U.S.C. § 1915A(b)(1)-(2). [DN 8]. Additionally, Plaintiff filed a motion for a preliminary injunction, [DN 6], a related motion for oral argument, [DN 15], and a motion to seal this action, [DN 13]. The Court denied each motion. [DN 22]. Subsequently, Plaintiff and Defendants filed the motions currently before the Court.

I. **Motions for Summary Judgment**

   A. **Legal Standard**

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "may not make credibility determinations nor weigh the evidence when determining whether an issue of fact remains for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001); *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999)). "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Back v. Nestlé USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 251–52). The moving party must shoulder the burden of showing the absence of a genuine dispute of material fact as to at least one essential element of the nonmovant's claim or defense. Fed. R. Civ. P. 56(c); *see also Laster*, 746 F.3d at 726 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Assuming the moving party satisfies its burden of production, the nonmovant "must—by deposition, answers to interrogatories, affidavits, and admissions on

3

file—show specific facts that reveal a genuine issue for trial." *Laster*, 746 F.3d at 726 (citing *Celotex Corp.*, 477 U.S. at 324).

Additionally, the Court acknowledges that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by attorneys. *See Haines v. Kerner*, 404 U.S. 519 (1972). The duty to be less stringent with *pro se* complainants, however, "does not require [the Court] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted), nor to create a claim for a *pro se* plaintiff, *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975).

### B. Discussion

Plaintiff filed a Motion for Partial Summary Judgment claiming Defendants had knowledge of a risk to his safety but failed to take reasonable measures to guarantee his safety. [DN 21-2 at 157]. In response, Defendants filed their own Motion for Summary Judgment. [DN 31-1]. Defendants assert they are entitled to qualified immunity because Plaintiff has presented no objective evidence that he was incarcerated under conditions posing a substantial risk of harm. *Id.* at 285, 287. Alternatively, Defendants contend they responded reasonably to any risk of harm. *Id.* at 287–89.

### i. Qualified Immunity Defense

Pursuant to the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The question of whether qualified immunity is available to a defendant involves a two-step process: "[f]irst, the court must determine whether, based upon the applicable law, the facts viewed in the light most

favorable to the plaintiffs show that a constitutional violation has occurred." *Bell v. Johnson*, 308 F.3d 594, 601 (6th Cir. 2002). Then, "if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Saucier v. Katz*, 533 U.S. 194 (2001). In order for a law to be deemed as "clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Bell*, 308 F.3d at 602. In other words, "the unlawfulness [of the action] must be apparent." *Id.* "Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation." *Id.*

As a threshold matter, the Court notes that Plaintiff's right to be free from deliberate indifference to his safety was clearly established. "The Supreme Court has held that 'prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners.'" *Bishop v. Hackel*, 636 F.3d 757, 765–66 (6th Cir. 2011) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). Moreover, the Sixth Circuit has recognized "an inmate's right to be free from prison violence as clearly established." *Id.* (collecting cases). Therefore, Plaintiff's constitutional right to be free from deliberate indifference to his safety was clearly established at the time of the alleged constitutional violation. Thus, the main issue in this case is whether Defendants violated Plaintiff's Eighth Amendment rights.

The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of the inmates" in their custody. *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. "A prison official violates an inmate's rights only if the official is 'deliberately indifferent to inmate health or safety.'" *Mangum v. Repp*, 674 F. App'x 531, 537 (6th Cir. 2017) (quoting *Farmer*, 511 U.S. at 834). "To raise a cognizable constitutional claim for deliberate indifference to an inmate's safety, an inmate must make a two-part showing: (1) the alleged mistreatment was objectively serious; and (2) the defendant subjectively ignored the risk to the inmate's safety." *Bishop*, 636 F.3d at 766 (citing *Farmer*, 511 U.S. at 834). "On balance, the deliberate indifference analysis is 'fact-bound and dependent on both witness credibility and those inferences that a jury can reasonably draw from the relevant circumstances. This inquiry 'is therefore ill-suited for summary judgment in all but the clearest cases.'" *McCracken v. Haas*, 324 F. Supp. 3d 939, 947 (E.D. Mich. 2018) (quoting *Doe v. District of Columbia*, 215 F.Supp.3d 62, 77 (D.D.C. 2016)).

    a. **Objective Component**

"To establish a constitutional violation based on failure to protect, a prison inmate first must show that the failure to protect from risk of harm is objectively 'sufficiently serious.'" *Bishop*, 636 F.3d at 766 (citing *Farmer*, 511 U.S. at 833). The objective component is satisfied if the plaintiff is "incarcerated under conditions posing a substantial risk of serious harm." *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001). The Sixth Circuit "analyze[s] the objective component 'in the abstract.'" *Richko v. Wayne Cty., Mich.*, 819 F.3d 907, 916 (6th Cir. 2016) (quoting *Clark–Murphy v. Foreback*, 439 F.3d 280, 286–87 (6th Cir. 2006)). "In the abstract, one prison inmate's threat to

the health and safety of another inmate is 'sufficiently serious' to satisfy [the objective] requirement." *Williams v. McLemore*, 247 F. App'x 1, *9 (6th Cir. 2007); *see also Williams v. Wells*, No. 02-74530, 2006 WL 800788, at *7 (E.D. Mich. Mar. 29, 2006) ("A threat of bodily harm is sufficiently serious to satisfy the objective component of a deliberate indifference claim. *Curry*, 249 F.3d at 506."). For example, in *Richardson v. Bauman*, an inmate claimed he was approached and threatened by members of the MS-13 gang and subsequently received two physical wounds. *Richardson v. Bauman*, 702 F. App'x 402, 404 (6th Cir. 2017). Prison officials denied Richardson's repeated requests for protection on the basis that he could not identify the prisoners who were threatening him and thus, the "need for protection could not be substantiated." *Id.* Upon reviewing the record in a light most favorable to the plaintiff, the Sixth Circuit found that Richardson faced a substantial risk of serious harm, despite the fact that "Richardson was less than forthcoming with prison officials when requesting protection about why the MS-13 gang would have targeted him," and the fact that there was "no proof, other than hearsay, that the MS-13 gang was actually present in the prisons in question." *Id.* at 405. In contrast, the Sixth Circuit has found that a "general concern" about safety does not rise to the level of a substantial threat of serious harm. *Gant v. Campbell*, 4 F. App'x 254, 256 (6th Cir. 2001) (finding the objective component was not satisfied when an inmate warned prison officials that he feared being transferred to another prison because his brother was attacked there but had not yet received any specific threats himself).

In this case, Defendants argue that the objective component is not satisfied because "Plaintiff has presented no objective evidence that he was incarcerated under conditions posing a substantial risk of serious harm." [DN 31-1 at 288]. Specifically, Defendants allege that Plaintiff provided no evidence that being issued a uniform specific to inmates in protective custody while at EKCC placed him at substantial risk. *Id.* at 287. Moreover, Defendants note that Plaintiff refused

7

to assist Defendant Fisher with her investigation into Plaintiff's request for protective custody and would not identify the inmates who threatened his safety. *Id.* at 287–88. Finally, Defendants claim that Plaintiff's decision to waive protective custody while incarcerated at WKCC "belie his oft stated fear of being targeted for extortion and assault." *Id.* at 287.

In response, Plaintiff argues he submitted ample documentary evidence demonstrating the continuing threat to his safety. [DN 44-2 at 432]. First, Plaintiff notes it is undisputed that he was issued a green uniform at EKCC from March 15, 2018 to June 11, 2018. [DN 44-2 at 425; DN 31-1 at 292]. Prison records show that during this time Plaintiff began filing inmate grievances and requests for protection regarding threats and harassment he received due to his green uniform. [*See* DN 44-3]. For instance, on June 7, 2018, he wrote that he was being "harassed and threatened on a daily basis" due to his green clothing. [DN 44-3 at 483]. After being transferred to KSP, Plaintiff wrote to prison officials stating he "was approached by some guys that told me they knew what happened with me at Eastern,[1] and I would have to pay them to stay in the yard." [DN 44-5 at 594] When Plaintiff said he did not know what they were talking about, he was threatened that he would be stabbed. *Id.* Shortly thereafter, Plaintiff was attacked in the prison's cafeteria. *Id.*; *see also id.* at 597–98. Plaintiff informed prison officials of this threat and his fear that inmates would continue to harm him due to his previous uniform. Regardless of whether Plaintiff was actually threatened or attacked because of the time he spent wearing a green uniform, he informed prison officials that other inmates had threatened his safety. Even if an inmate cannot specifically identify the inmate responsible for the threat or is less than forthcoming with prison officials, a threat of bodily harm is sufficiently serious to satisfy the objective component of a deliberate indifference claim.

b. **Subjective Component**

---

[1] This is presumably a reference to the green uniform.

The subjective component of the deliberate indifference standard requires the plaintiff to show that the individual defendants "(1) were 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]'; (2) actually drew the inference; and (3) consciously disregarded the risk." *Mangum v. Repp*, 674 F. App'x 531, 537 (6th Cir. 2017) (quoting *Farmer*, 511 U.S. at 837, 839). "Deliberate indifference is a 'question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, [] and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *McCracken v. Haas*, 324 F. Supp. 3d 939, 946–47 (E.D. Mich. 2018) (quoting *Farmer*, 511 U.S. at 842). For instance, "evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past" may be relevant. *Farmer*, 511 U.S. at 842. However, the Supreme Court has held that "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 830.

In support of their Motion for Summary Judgment, Defendants do not contest that the three elements of the subjective component are satisfied. [*See* DN 47]. Instead, Defendants state, "assuming without agreeing, there was a substantial risk to Plaintiff's safety and that the Defendants' knew of that risk, there is still no Eighth Amendment violation because each Defendant responded reasonably to the risk." *Id.* at 723. In response, Plaintiff claims that Defendants did not employ measures reasonably calculated to ensure his safety, but rather used DOC policies as a tool "to skirt their responsibility of protecting the Plaintiff." [DN 44-2 at 456]. The Court will address each Defendants' actions in turn.

    i. **Jonathan Grate**

First, Plaintiff claims that Acting Commission of the Department of Corrections, Jonathan Grate ignored his request for protection and therefore, was deliberately indifferent to his safety. [DN 21-2 at 156]. On March 19, 2019, Plaintiff wrote a letter to Grate informing him of a risk to Plaintiff's safety. [DN 31-1 at 305]. While Grate may not have personally responded to Plaintiff's request for assistance, he referred the letter to a Corrections Program Administrator who researched Plaintiff's status and responded to Plaintiff directly. [DN 31-1 at 289–90]. There is no evidence that Grate had any further contact with Plaintiff. *Id.* The Sixth Circuit has noted that "[r]esponding to a risk to an inmate by referring the matter for further investigation or taking other appropriate administrative action may in some cases fulfill an official's protective duties under the Eighth Amendment." *Bishop*, 636 F.3d at 769–70. Moreover, even assuming that Grate knew there was a substantial risk to Plaintiff's safety, a reasonable juror would conclude that the Acting Commission of the DOC lacks the capacity to respond personally to inmates' individual requests for protection. Therefore, Grate's decision to refer Plaintiff's letter to a Corrections Program Administrator was a reasonable discharge of his duty to protect Plaintiff and he is entitled to qualified immunity.

### ii. DeEdra Hart

Second, Plaintiff claims that Warden DeEdra Hart ignored his request for protection and therefore, was deliberately indifferent to his safety. [DN 21-2 at 156]. On March 15, 2019, Plaintiff wrote a letter to Hart notifying her that he had been threatened by fellow inmates, was subsequently attacked, and feared he would "soon be seriously injured." [DN 31-3 at 302–03]. As Warden, Hart has executive authority over the prison staff responsible for housing determinations and custody levels. [DN 39-2 at 367]. However, she delegates housing determinations and custody level decisions to classification staff. *Id.* Thus, Hart responded to Plaintiff's letter by directing him to

"notify his Unit staff of his safety concerns and protective custody request in order to initiate an investigation and classification hearing." [DN 31-1 at 290]. Defendants claim Hart's response to Plaintiff "was a reasonable discharge of her duty to protect Plaintiff." *Id.* at 291. However, assuming there was a substantial risk to Plaintiff's safety and Hart knew of that risk, Plaintiff has presented an issue of fact as to whether it was reasonable for a warden with executive authority over staff making housing determinations to refer Plaintiff to his Unit staff, rather than taking immediate action, or at least some alternative course of action, to ensure Plaintiff's safety. Therefore, Hart is not entitled to qualified immunity as to this claim.

Second, Plaintiff claims that Hart violated his Eighth Amendment rights by "failing to provide humane conditions of confinement by failing to implement measures to reduce violent inmate assaults at KSP." [DN 1 at 9]. In their Motion for Summary Judgment, Defendants assert that Plaintiff has not demonstrated that Hart's failure to perform her job led directly to the violation of his Eighth Amendment rights. [DN 31-1 at 291]. In making this argument, Defendants rely on the Sixth Circuit case *Taylor v. Michigan Dept. of Corrections*, in which the plaintiff alleged that the prison warden's "failure to establish a policy or implement a procedure that would protect vulnerable inmates from transfers to unsafe prisons amounted to deliberate indifference." 69 F.3d 76, 78 (6th Cir. 1995). There, Warden Foltz was specifically responsible for reviewing and approving all prisoner transfers and for implementing "procedures that would protect vulnerable inmates from dangerous transfers." *Id.* at 80. In order to hold Foltz liable, the plaintiff was required to show that Foltz "personally had a job to do, and did not do it," and this "failure to do his job resulted directly in the violation of the plaintiff's Eighth Amendment rights." *Id.* at 81 (quoting *Hill v. Marshall*, 962 F.2d 1209, 1213 (6th Cir. 1992)).

Similarly, in this case, Plaintiff claims that Hart abandoned the specific duties of her position by failing to provide humane conditions of confinement by failing to implement measures to reduce violent inmate assaults at KSP. [DN 1 at 9]. In support of this theory, Plaintiff asserts that KSP administrators, led by Hart, are "maintaining an atmosphere at KSP that is rife with violent assaults, gang race riots, extortion, and sexual assaults. There is no action being taken to improve the safety of the inmates at KSP." *Id.* Plaintiff also points to Hart's admission that "[t]here are members of security threat groups [gangs] incarcerated at Kentucky State Penitentiary" and that inmates affiliated with these groups "have been known to extort and/or assault other inmates." [DN 392 at 366–67]. However, these facts alone do not establish an issue of fact as to whether Hart has failed to do her job. Moreover, Plaintiff has not identified what specific aspect of Hart's job is at issue. Thus, Hart is entitled to qualified immunity as to Plaintiff's claim.

### iii. Amy Fisher

Third, Plaintiff claims that Defendant Amy Fisher acted with deliberate indifference to his safety when she recommended the Classification Committee deny his protective custody request and took no further action to ensure his safety. [DN 21-2 at 156]. Fisher served as Plaintiff's Classification and Treatment Officer from April 1, 2019 to May 10, 2019. [DN 39-1 at 363]. On April 1, 2019, Plaintiff send Fisher a letter stating that he was "being targeted for extortion and assaults by various gang members." [DN 44-5 at 604]. Pursuant to CPP § 18.15(I)(F)(1), Fisher opened an investigation into Plaintiff's claims. [DN 31-1 at 292]. Defendants assert that "Plaintiff refused to cooperate with this investigation, and thus did not provide the names of any inmates who had threatened Plaintiff." *Id.* However, Plaintiff states that once Fisher received his letter, she came to his cell and offered him protective custody, [DN 44-2 at 434, 443], though Fisher denies making this offer, [DN 39-1 at 363]. Plaintiff took great offense to Fisher's actions claiming that

the cell was, in essence, an "amphitheater setting with enhanced acoustic volume," [DN 44-2 at 443], and the conversation occurred in the "the presence of many other inmates." [DN 21-2 at 154]. Thus, Plaintiff claims that Fisher's conduct put him at a greater risk of harm and this is why he refused to participate in her investigation. [DN 44-2 at 443]. After Fisher approached Plaintiff, Defendants claim she consulted with KSP Internal Affairs Lt. Seth Madden as to whether he had any knowledge of threats to Plaintiff's safety, which he denied. [DN 31-1 at 292]. Additionally, Fisher confirmed that Plaintiff had been issued a green uniform during his time at EKCC. *Id.* Fisher then reported her findings on the Protective Custody Form and recommended that the Classification Committee deny Plaintiff's protective custody request. *Id.* Defendants argue that Fisher's actions reasonably discharged her duty to protect Plaintiff.[2] *Id.*

Assuming that there was a substantial risk to Plaintiff's safety and Fisher knew of that risk, Plaintiff has presented an issue of fact as to whether it was reasonable for Fisher to recommend the Classification Committee deny Plaintiff's protective custody request, as well as whether the scope of her investigation and the tactics employed therein were appropriate. Accordingly, Fisher is not entitled to qualified immunity.

  iv. **Michael Spindler**

Fourth, Plaintiff claims that Defendant Michael Spindler acted with deliberate indifference to his safety when he denied his protective custody request and took no further action to ensure his

---

[2] Additionally, Defendants argue that "Fisher's role in investigating Plaintiff's claims does not subject her to liability under § 1983." [DN 31-1 at 293]. They continue: "As the Sixth Circuit Court of Appeals has similarly noted regarding prison grievances, claims are against the subjects of the grievance, not those who merely decided whether to grant or deny grievances." *Id.* Defendants raise the same argument in regard to Spindler and Bradley. *Id.* at 294. The Court is unpersuaded by this argument. Plaintiff's claims against Fisher, Spindler, and Bradley do not involvement their denial of administrative grievances. Rather, he claims they are liable due to their direct involvement in investigating, analyzing, and ultimately denying his request for protective custody. *See Martin v. Harvey*, 14 F. App'x 307, 309 (6th Cir. 2001) ("The denial of the grievance is not the same as the denial of a request to receive medical care."). Thus, the Court rejects Defendants' argument that Fisher, Spindler, and Bradley cannot be subject to liability under §1983.

safety. [DN 21-2 at 156]. Spindler served on the Classification Committee responsible for approving or denying Plaintiff's protective custody request. [DN 31-1 at 293]. During the hearing, Plaintiff made a personal statement regarding the threats to his safety and the Committee reviewed the results of Fisher's investigation. *Id.* Defendants claim that because "Plaintiff refused to cooperate with Fisher's investigation and failed to provide the names of any inmates who threatened Plaintiff, Spinder['s] [] recommendation" is consistent with CPP 18.15(I)(H) which states:

> The following shall be considered as grounds to disapprove the protective custody request:
>> Failure to provide a specific reason for requesting protective custody.
>> Failure to provide names of inmates who present threats.

*Id.* Thus, Defendants claim Spindler reasonably discharged his duty to protect Plaintiff. *Id.* at 294.

In response, Plaintiff first notes that Defendants rely on CPP 18.15 as a "total fulfillment of their duties to protect Plaintiff and others from violence at the hands of others." [DN 44-2 at 449–50]. However, Plaintiff claims that this policy "is being abused by these officials due to the number of inmates seeking PC at every Kentucky prison." *Id.* at 450. Specifically, Plaintiff highlights the fact that inmates in Kentucky prisons made 653 documented requests for protection between August 2018 and January 2019; however, only one inmate was granted protective custody.[3] [*See* DN 44-4]. Plaintiff claims these "outrageous numbers" illustrate that Defendants are using CPP 18.15 to "disregard known risks to inmate safety with red tape." *Id.* at 454. Such action, Plaintiff argues, is not reasonable. *Id.*

---

[3] Based on the records obtained by the Plaintiff, it appears that the Department of Corrections only began recording the number of protective custody requests that were approved or denied in August 2018.

The Court finds that Plaintiff has raised a question of fact as to whether Spindler's application of a policy that results in the denial of 99.85% of protective custody requests is a reasonable response to known risks to inmates' safety. Moreover, assuming that Spindler was aware of a substantial risk to Plaintiff's safety, there is an issue of fact as to whether it was reasonable for Spindler to deny Plaintiff's protective custody request. Accordingly, Spindler is not entitled to qualified immunity.

### v. Travis Bradley

Finally, Plaintiff claims that Defendant Travis Bradley acted with deliberate indifference to his safety when he denied his protective custody request and took no further action to ensure his safety. [DN 21-2 at 156]. Like Spindler, Bradley served on KSP's Classification Committee. Defendants claim that Bradley reasonably denied Plaintiff's protective custody request pursuant to CPP 18.15. [DN 31-1 at 293]. However, Plaintiff has raised an issue of fact as to whether application of this policy was a reasonable response to a known risk to inmate's safety. More generally, assuming that Bradley was aware of a substantial risk to Plaintiff's safety, there is an issue of fact as to whether it was reasonable to deny the protective custody request. Thus, Bradley is not entitled to qualified immunity.

## II. Motion to Clarify

Plaintiff filed a motion to clarify the record as to whether he declined Defendants' offer to transfer facilities. [DN 25]. In Defendant's Response to Plaintiff's Motion for Preliminary Injunction, they state: "Further, as Plaintiff himself states in his Complaint, KSP staff raised the possibility of a transfer to a different institution, which Plaintiff opposes." [DN 14 at 72]. In his Motion to Clarify, Plaintiff contends that his Complaint did not state that KSP officials offered to transfer him to a different institution and "at no time has Plaintiff stated he opposes transfer." [DN

25 at 195]. Plaintiff believes Defendants misinterpreted his Motion for Preliminary Injunction in which he stated: "On April 8, 2019, at the hearing in which Plaintiff's PC request was denied, Defendant Travis Bradley informed Plaintiff that the common practice at KSP where Plaintiff is currently incarcerated, is to transfer an inmate that is facing a threat at KSP to another facility." [DN 6 at 41]. Upon review of the record, the Court acknowledges that the Complaint does not state that Plaintiff denied a transfer, nor has he stated that he opposes a transfer. To the extent that the Court's Memorandum Opinion and Order denying Plaintiff's motion for preliminary injunction, [DN 22], states otherwise, it is amended and Plaintiff's Motion to Clarify, [DN 25], is GRANTED.

### III. Motion for Extension of Time

Plaintiff filed a Motion for Extension of Time to file his pretrial memorandum until after the Court issued a ruling on the motions for summary judgment. [DN 48]. Defendants had no objection and request the Court hold the current Scheduling Order in abeyance pending the Court's ruling. [DN 50]. Both motions are GRANTED. A telephonic conference is scheduled for February 19, 2020 at 12:00 PM to amend the Scheduling Order.

### CONCLUSION

For the reasons stated herein: **IT IS HEREBY ORDERED**:

1) Plaintiff's Motion for Partial Summary Judgment, [DN 21], is **DENIED**;

2) Defendants' Motion for Summary Judgment, [DN 30], is **DENIED IN PART** and **GRANTED IN PART.** Plaintiff's claim against Defendant Jonathan Grate is **DISMISSED** and Plaintiff's Eighth Amendment claim against Defendant DeEdra Hart for failing to provide humane conditions of confinement is **DISMISSED**;

3) Plaintiff's Motion to Clarify the Record, [DN 25], is **GRANTED**;

4) Plaintiff's Motion for Extension of Time to File, [DN 48], is **GRANTED**;

5) Defendant's Motion to Hold Scheduling Order in Abeyance, [DN 50], is **GRANTED**;

6) A telephonic conference is scheduled for February 19, 2020 at 12:00 PM. The parties must call **1-877-848-7030** then give the **Access Code 2523122 and #, then when prompted press # again** to join the call.

**IT IS SO ORDERED.**

**Thomas B. Russell, Senior Judge**
**United States District Court**

January 8, 2020

CC: Attorneys of Record

William Joseph Madden
153070
KENTUCKY STATE PENITENTIARY
266 Water Street
Eddyville, KY 42038
PRO SE