UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISON
CIVIL ACTION NO. 5:19-CV-73-TBR-LLK

WILLIAM JOSEPH MADDEN,                                                              PLAINTIFF

v.

JONATHAN GRATE, *et al.*,                                                          DEFENDANTS

**MEMORADNUM OPINION AND ORDER**

This matter is before the Court on Plaintiff William Joseph Madden's *pro se* Motion for Sanctions. [DN 33]. Defendants responded, [DN 52], and Plaintiff did not reply. This matter is ripe for adjudication. For the reasons stated herein: Plaintiff's Motion for Sanctions, [DN 33], is DENIED.

**BACKGROUND**

Plaintiff requests the Court sanction Defendants pursuant to Federal Rule of Civil Procedure 11(b). [DN 33]. He points to six instances in which he claims Defendants have made false or misleading statements "for the improper purposes of manipulating the record, deceiving the Court, and acquiring unjust relief." *Id.* at 331. In response, Defendants argue their pleadings are not false or misleading and point to specific facts in the record to support their position. [DN 52].

**LEGAL STANDARD**

Federal Rule of Civil Procedure 11 requires an attorney to certify "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that "a pleading, written motion, or other paper" (1) "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;" that (2) "the claims, defenses, and other legal contentions are warranted by existing law or by a

1

nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;" that (3) "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and" that (4) "the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information." Fed. R. Civ. P. 11(b).

"If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). The sanction "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). "[I]f imposed on motion and warranted for effective deterrence," the sanction may include "an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4).

## DISCUSSION

As a threshold matter, the Court must address Rule 11's safe harbor provision. A party seeking Rule 11 sanctions must follow a two-step process. First, they must serve the motion on the opposing party. Fed. R. Civ. P. 11(c)(2). If the opposing party does not withdraw or appropriately correct the challenged material within twenty-one days, the motion for sanctions may be filed with the court. *Id.* The Sixth Circuit has held that "sanctions under Rule 11 are unavailable" unless the parties comply with the safe harbor provision. *Ridder v. City of Springfield*, 109 F.3d 288, 297 (6th Cir. 1997). In this case, there is no indication that Plaintiff complied with the safe harbor rule.

Therefore, Plaintiff's motion violates the procedural requirements of Rule 11 and should be denied accordingly.

Even if Plaintiff had complied with the twenty-one-day safe harbor provision, the Court would have found that the Defendants' conduct did not warrant the imposition of sanctions. In the Sixth Circuit, "the test for the imposition of Rule 11 sanctions is 'whether the individual's conduct was reasonable under the circumstances.'" *Tropf v. Fidelity Nat'l Title Ins. Co.*, 289 F.3d 929, 939 (6th Cir. 2002) (citation omitted). The Court will review the reasonableness of each of the Defendants' allegedly false and misleading statements in turn.

First, in their Response to Plaintiff's Motion for Preliminary Injunction, Defendants stated: "Further, as Plaintiff himself states in his *Complaint*, KSP staff raised the possibility of a transfer to a different institution, *which Plaintiff opposes*." [DN 14 at 72]. This is an apparent reference to Plaintiff's Motion for Preliminary Injunction in which he stated: "On April 8, 2019, at the hearing in which Plaintiff's P.C. request was denied, Defendant Travis Bradley informed Plaintiff that the common practice at Kentucky State Penitentiary ("K.S.P"), where Plaintiff is currently incarcerated, is to transfer an inmate that is facing a threat at K.S.P. to another facility." [DN 6 at 41]. Thus, Defendants incorrectly cited Plaintiff's Complaint, rather than his Motion for Preliminary Injunction. Moreover, as discussed in the Court's prior Memorandum Opinion and Order, [DN 54], there is no evidence in the record that Plaintiff has opposed a transfer. Despite these misstatements, the Court finds the Defendants' statement was a reasonable paraphrase of Plaintiff's motion.

Second, Defendants' Motion for Extension of Time stated: "*On July 10, 2019* the Plaintiff served . . . Request for Production of Documents, and Request for Admissions directed to Defendants Fisher and Hart upon the Defendants." [DN 23 at 190]. While Plaintiff mailed the

discovery requests on July 8, 2019, they were stamped as received by the Office of Legal Services on July 10, 2019. [*See* DN 52-3; 52-4]. Accordingly, Defendants' statement was reasonable under the circumstances.

Third, Defendants' Motion for Summary Judgment stated: "He claims that other inmates, including violent prison gang members . . . suspected he was either a '*child molester*' or an '*informant.*'" [DN 30-1 at 232]. Plaintiff's Complaint states that he was forced to wear a uniform that is only issued to inmates who are granted protective custody. [DN 1 at 4]. He continues: "It is common knowledge among both prisoners and officials alike, and well established, that inmates who have been in PC, or even suspected of having been in PC, are thought of with similar prejudice and contempt as child molesters and informants by a majority of the inmate population, and even some staff." *Id.* Again, the Court finds that Defendants' paraphrase of Plaintiff's Complaint was reasonable under the circumstances.

Fourth, Defendants' Motion for Summary Judgment stated: "On March 11, 2019 Plaintiff states he was assaulted by another inmate while *entering the cafeteria* for breakfast." [DN 30-1 at 323]. Plaintiff's Complaint states, "On March 11, 2019, Plaintiff was required to enter the prison cafeteria at approximately 7:15 am for breakfast. As Plaintiff was leaving the cafeteria, an unknown inmate approached Plaintiff and began throwing punches." [DN 1 at 5–6]. Although Defendants incorrectly stated that Plaintiff was attacked as he was entering, rather than leaving, the cafeteria, the Court finds their statement was reasonable under the circumstances.

Finally, Plaintiff's fifth and sixth examples of false statements relate to whether he sought protective custody while incarcerated at Western Kentucky Correctional Complex. In their Motion for Summary Judgment, Defendants stated: (1) "On September 7, 2018 Plaintiff waived protective custody *after first seeking protective custody* because 'Inmates are trying to extort money; no

names given'"; and (2) "On December 13, 2018 Plaintiff waived protective custody *after first seeking protective custody* because 'Justin Kendall came up to I/M Madden and told him its time to pay up.'" [DN 30-1 at 239]. Prison records show that Plaintiff was offered protective custody after both incidents, but he refused. [DN 52-8; 52-9]. However, the parties dispute whether Plaintiff sought protective custody because of these events, or prison staff discovered the extortion attempts through some other means. Defendants acknowledge that Plaintiff did not formally request permanent protective custody in response to these events but claim that Plaintiff reported the threats to prison officials in order to seek protection. [DN 52 at 753]. Plaintiff did not offer any support for his position that he did not seek protective custody. [DN 33 at 330–31]. However, the fact that one of the Protective Custody Refusal Forms states that "Madden did not tell security" about the extortion threat "because he did not take [it] seriously," suggests that Plaintiff did not initially report the threat. [DN 52-9 at 764]. Without more information, the Court declines to rule on whether Plaintiff sought protective custody in response to the alleged extortion attempts; however, the Court finds that Defendants' characterization of the events appears reasonable under the circumstances. Thus, Defendants' conduct does not warrant the imposition of sanctions.

## CONCLUSION

For the reasons stated herein, **IT IS HEREBY ORDERED**, Plaintiff's Motion for Sanctions, [DN 33], is **DENIED.**

**IT IS SO ORDERED.**

*[Signature: Thomas B. Russell]*

**Thomas B. Russell, Senior Judge**
**United States District Court**

January 30, 2020

CC: Attorneys of Record
William Joseph Madden, 153070
GREEN RIVER CORRECTIONAL
COMPLEX 1200 River Road
P. O. Box 9300
Central City, KY 42330-9300

5